IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LESTER R. GARNAS d/b/a Edgemark,**<br>    Plaintiff,<br><br>v.<br><br>**RIMON, P.C.,**<br>    Defendant. | CIVIL ACTION NO.:___-cv-_____ |

## COMPLAINT

Plaintiff, LESTER R. GARNAS ("**Plaintiff**" or "**Garnas**") by and through his undersigned attorneys, hereby brings this Complaint against defendant, RIMON, P.C. ("**Defendant**" or "**Rimon**"), and in support thereof avers as follows:

### JURISDICTION AND VENUE

1. Plaintiff LESTER R. GARNAS is an individual and resident of the Commonwealth of Pennsylvania having an address of residence located at 243 Valley Ridge Road Haverford, PA 19041.

2. Defendant RIMON, P.C. is a professional corporation organized and existing under the laws of the State of California with its principal place of business located at One Embarcadero Center, Suite 400, San Francisco, California 94111.

3. A significant portion of the events giving rise to this lawsuit occurred in Pennsylvania.

4. This Court has jurisdiction over the parties and venue is proper in this Court pursuant to 28 U.S.C. §1391 in that the causes of action asserted in this Complaint can be brought because a) this district is where a substantial part of the events or omissions giving rise to the claims occurred, and b) this district is where the transactions and occurrences giving rise to

1

the causes of action in this Complaint occurred. Transactions at issue are located and predominantly occurred in this venue.

## FACTS

5. Plaintiff Garnas is an executive coach for the development of strategy and communication of management's marketing vision to employees focused on generating commitment, action and consistent follow-through doing business under the fictitious name of "Edgemark" which name is registered with the Pennsylvania Corporations Bureau.

6. Defendant Rimon advertises itself to the public on the internet as having "Global reach of international law firm with close-knit team and agility of a boutique; specializing in corporate law, litigation, IP, and trusts and estates." *See* https://twitter.com/Rimonlaw.

### *The Parties' Management Letter of Intent*

7. Rimon directed its communications to Garnas, predominately, if not entirely, via email and telephone, to Garnas' Pennsylvania office.

8. After a period of introduction and negotiations with Plaintiff Garnas in fall 2012, Defendant Rimon entered into a written Management Letter of Intent dated December 10, 2012 ("**Management LOI**") with Garnas. A true and correct copy of the parties' Management LOI is attached hereto as **Exhibit A**.

9. The Management LOI was signed by (a) Rimon partner and Chief Executive Officer ("CEO"), Michael Moradzadeh, and (b) Rimon partner and Chief Operating Officer, Yaacov Silberman.

10. In fact, as part of the negotiation process leading up to the final version of the Management LOI that the parties signed, Rimon's CEO Moradzadeh drafted the Management LOI's "Coaching, Fee Structure and Payment Timing" provisions. *See* **Ex. A** at 2-3.

11. Under the terms of the Management LOI, Rimon contracted with Garnas for him to provide "certain partner development services" to assist Rimon attorneys in (a) "getting new business"; (b) "increase business from current clients"; (c) thinking and acting more strategically in cross-selling firm services; (d) building current client trust for "firmer relationship bonds"; (e) value pricing their work; and (f) identifying attorney skills and interests in business marketing for positive contribution and development of Rimon. *See* **Ex. A** at 1.

12. The compensation Garnas was to be paid under the Management LOI basically focused on the payment by Rimon to him of a consulting fees (herein collectively the "Consulting Fees") on a variable payment structure of 10% to 15% of a Rimon attorney's actual revenue increases "**attorney's revenue increases (based on actual colletions** (sic) **of matters originated by an attorney from his/her program enrollment date through the next twelve months**" measured on "½ of the attorney's total book [originated and collected] for the 12 month period preceding the program start date" (here for calendar year 2012) for comparison to the first six months of June 2013 (6-months) of the attorney's originated and collected "book" and again at December 31, 2013 year end (12 months) of the attorney's originated and collected "book" as set forth in more detail in the Management LOI. *See* **Ex. A** at 2-3.

13. Moreover, Rimon was to pay Garnas the Consulting Fees "at six-month and twelve-month intervals" "within 30 days of the close" of each of those periods. *See* **Ex. A** at 2 & 3.

14. Rimon's payments to Garnas were to be "due regardless of when collection occurs." *See* **Ex. A** at 2 & 3.

15. After the parties entered into the Management LOI and in the early weeks of 2013, Rimon's CEO Moradzadeh provided Garnas with Rimon invoicing and collections information for 2012, though not the documentary support for this information.

16. As for the two Rimon attorneys with whom Garnas worked most extensively in 2013, John Isaza and Robin Powers, Rimon provided to Garnas invoicing and collected revenue on that invoicing for Mr. Isaza and Ms. Power, unsubstantiated by any supporting documentation on a "confidential" basis.

17. Thereafter, Garnas proceeded to provide Rimon and certain of its attorneys approximately 148 hours in 2013 of one-on-one coaching services, assisting them with intelligence gathering and otherwise helping them to strategize approaches to target clients/companies they selected for business development and to develop business plans to grow their respective books of business.

18. As many of the Rimon attorneys with whom Garnas was to work were not ready to participate in the Garnas-provided coaching in January 2012, there was a delay in their participation and in taking advantage of the services available from and being provided by Garnas in early 2013.

19. This participation delay on Rimon's and its attorneys' part was also a material breach of the Management LOI that deprived Garnas of Consulting Fee income and opportunity.

20. Garnas started his work with and for various Rimon attorneys as follows: (a) on January 25, 2013 with Robin Powers; (b) on January 31, 2013 with John Isaza and Paul Economon; (c) on February 1, 2013 with Scott Raber; (d) on February 6, 2013 with Bruce Abramson; (e) on April 12, 2013 with Holly Logue; and (f) on June 20, 2013 with Juan Zuniga.

21. Under the Management LOI, Rimon was to pay Garnas a withdraw fee for any participant that withdrew from the coaching program after the first ninety (90) days.

22. Rimon never provided Garnas with documentary substantiation of any actual invoice information or the collected revenue thereon within the unambiguously required 30 day period following the end of the six (6) period ending on June 30, 2012 and the twelve (12) month period ending on December 31, 2013, respectively, as required under the Management LOI. *See* **Ex. A** at 3.

23. As the reporting and payment obligations for Rimon's collected revenue information for Mr. Isaza and Ms. Powers were material obligations under the Management LOI, Rimon breached those material obligations when it unilaterally failed to timely provide that information and those payments to Garnas by the July 30, 2013 and January 30, 2014 deadlines, as well as for all collected revenues received thereafter on amounts invoiced in 2013.

24. In September 2013, however, Rimon did for the first time provide to Garnas Rimon's "Revenue Analysis" information containing Rimon's actual invoicing information for Mr. Isaza and Ms. Powers for the first nine (9) months of 2012 and 2013.

25. The "Revenue Analysis" information Rimon provided to Garnas confirmed that the January 2013 unsubstantiated information Rimon previously provided to Garnas for Mr. Isaza and Ms. Powers was vastly overstated.

26. Rimon provided no "actual amounts collected" information with this "Revenue Analysis."

27. For example, "Revenue Analysis" information Rimon provided confirmed that the actual amount invoiced of Ms. Powers' clients for the first nine (9) months of 2012 was

approximately 66% less than the average amount for the same period Rimon represented in January 2013 was invoiced for 2012.

28. For example, "Revenue Analysis" information Rimon provided confirmed that the actual amount invoiced of Mr. Isaza's clients for the first nine (9) months of 2012 was about 50% less than the average amount for the same period Rimon represented in January 2013 was invoiced for 2012.

29. Plainly, with the limited and incomplete information which Rimon did make available to Garnas in or about September 2013, the actual 2012 invoicing performance of Mr. Isaza and Ms. Powers was purposefully overstated by Rimon in January 2013 as Rimon was in possession of records to reflect more modest performance against which Garnas' performance and Consulting Fee would be measured for purposes of calculating all Consulting Fees due him under the Management LOI.

30. In addition to the foregoing unpaid Consulting Fees, Rimon also failed to pay to Garnas the $2,000 withdraw fees each for Bruce Abramson and Holly Logue, who both participated in the Garnas-provided coaching program for more than 90 days, for a total of unpaid withdrawal fees of $4,000.

31. At no time relevant herein has Rimon *paid anything to Garnas*.

## COUNT I—BREACH OF CONTRACT

32. Plaintiff re-alleges paragraphs 1 through 31 above as if set forth fully herein.

33. Plaintiff Garnas complied with all conditions precedent and with of his obligations under the Management LOI.

34. Under the Management LOI and during the period of time when the Management LOI between Plaintiff Garnas and Rimon was in effect, Plaintiff Garnas provided Rimon with all

6

contracted for services including without limitation his assisting Rimon attorneys in (a) "getting new business"; (b) "increase business from current clients"; (c) thinking and acting more strategically in cross-selling firm services; (d) building current client trust for "firmer relationship bonds"; (e) value pricing their work; and (f) identifying attorney skills and interests in business marketing for positive contribution and development of Rimon. *See* Ex. A at 1.

35. Upon information and belief, and in part derived from on what little invoicing information that Rimon provided in September 2013, Rimon has failed to:

    a. Provide to Garnas the information and documentary support therefor necessary to calculate all Consulting Fees owed to Garnas for his services rendered to Rimon and its attorneys, Mr. Isaza and Ms. Powers, under the Management LOI for (i) the first six (6) month interval payment of 2013; (ii) the twelve (12) month interval payment of 2013; and (iii) all sums due thereafter on all collected revenues on amounts invoiced in 2014; and

    b. Pay to Garnas any, let along all, Consulting Fees or the $4,000 of withdrawal fees due him under the Management LOI.

36. Under the Management LOI, Garnas earned and is entitled to be paid from Rimon all Consulting Fees and withdrawal fees due him under the Management LOI in an aggregate amount in excess of $75,000 and the precise amount of which can be determined at trial, upon information and belief, and based on the "Revenue Analysis" information Rimon provided of its actual invoicing for Mr. Isaza and Ms. Powers in or about September 2013.

37. Defendant Rimon has breached the parties' Management LOI by, among other things, failing to report and pay to Plaintiff Garnas all Consulting Fees and withdrawal fees due

7

him under the Management LOI in an aggregate amount in excess of $75,000 and the precise amount of which can be determined at trial.

38. Moreover, Defendant Rimon had a duty of good faith and fair dealing in the performance of its obligations under the Management LOI to report and pay to Plaintiff Garnas all Consulting Fees and withdrawal fees due him under the Management LOI in an aggregate amount in excess of $75,000 and the precise amount of which can be determined at trial.

39. Defendant Rimon has breached its duties of good faith and fair dealing by refusing to report and pay to Plaintiff Garnas all Consulting Fees and withdrawal fees due him under the Management LOI in an aggregate amount in excess of $75,000 and the precise amount of which can be determined at trial.

40. Defendant Rimon's breaches of contract and duties of good faith and fair dealing have caused Plaintiff Garnas to sustain damages and be denied the fruits of his contract with Defendant Rimon in an aggregate amount in excess of $75,000 and the precise amount of which can be determined at trial.

WHEREFORE, plaintiff, Lester R. Garnas demands judgment in his favor against defendant, Rimon, P.C. for an accounting and in an amount in excess of $75,000, together with litigation costs, attorneys' fees, and any other relief that this Court deems proper and just.

## COUNT II
## EQUITABLE ACCOUNTING

41. Plaintiff re-alleges paragraphs 1 through 40 above as if set forth fully herein.

42. Defendant Rimon is in possession of all of the information necessary to report, calculate and pay all amounts due Garnas all Consulting Fees and $4,000 of withdrawal fees due him under the Management LOI arising from Rimon's breaches of (a) the Management LOI and (b) all duties of good faith and fair dealing related thereto and herein at issue, and has wrongfully

refused to share substantial relevant information with Plaintiff Garnas or otherwise pay him.

43. Garnas' work for Rimon under the Management LOI—without receiving from Rimon the required 2012 and 2013 invoicing and collected revenues information for Mr. Isaza and Ms. Powers or payment thereon of all Consulting Fees, plus $4,000 of withdrawal fees due him under the Management LOI in an amount in excess of $75,000 and the precise amount of which can be determined at trial—supports the fact that Rimon materially breached the Management LOI and all duties of good faith and fair dealing related thereto which Rimon owed to Garnas.

44. Upon information and belief, Plaintiff Garnas therefore avers that Rimon is in possession of information necessary to calculate all amounts due Garnas arising from the breaches of the Management LOI and all duties of good faith and fair dealing related thereto herein at issue.

45. Garnas therefore is entitled to a complete accounting of the information needed to fully calculate the Consulting Fees and withdrawal fees due him under the Management LOI in an aggregate amount in excess of $75,000 and the precise amount of which can be determined at trial in order to fully calculate his damages.

46. Plaintiff Garnas lacks an adequate remedy at law to determine the full scope of the information necessary to report, calculate and pay all amounts due Garnas on all Consulting Fees and withdrawal fees due him under the Management LOI arising from Rimon's breaches of (a) the Management LOI and (b) all duties of good faith and fair dealing related thereto and herein at issue, without an accounting.

WHEREFORE, plaintiff, Lester R. Garnas demands judgment in his favor against defendant, Rimon, P.C. for an accounting and in an amount in excess of $75,000, together with litigation costs, attorneys' fees, and any other relief that this Court deems proper and just.

### COUNT III
### UNJUST ENRICHMENT

47.   Plaintiffs re-aver Paragraphs Nos. 1 to 46 as if repeated here in their entirety.

48.   Plaintiff Garnas pleads Count III in the alternative to Count I.

49.   As the party in possession of all of the information necessary to report, calculate and pay all amounts due Garnas of all Consulting Fees and withdrawal fees due him under the Management LOI arising from Rimon's breaches of (a) the Management LOI and (b) all duties of good faith and fair dealing related thereto and herein at issue, Rimon unjustly benefitted from Garnas' efforts, work and labors without ever compensating him for any of it.

50.   As a result, Rimon unjustly received a benefit from Garnas because it took his efforts, work and labors without providing any compensation to him.

51.   Rimon therefore has appreciated, accepted, and retained all benefits and amounts due Garnas and all Consulting Fees and withdrawal fees due him under the Management LOI under such circumstances that it would be inequitable for Rimon to retain such benefits and amounts without making payment to Garnas in an aggregate amount in excess of $75,000 and the precise amount of which can be determined at trial.

WHEREFORE, plaintiff, Lester R. Garnas demands judgment in his favor against defendant, Rimon, P.C. for an accounting and in an amount in excess of $75,000, together with litigation costs, attorneys' fees, and any other relief that this Court deems proper and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial in this action.

FELLHEIMER & EICHEN LLP

Dated: December 18, 2014

*signature*

John J. Jacko, III (PA Attorney ID No. 67477)
50 South 16th Street, Suite 3401
Philadelphia, PA 19102
T: (215) 253-6630
*Attorneys for Plaintiff,*
*Lester R. Garnas d/b/a Edgemark*