# EXHIBIT A

# Edgemark

PO Box 427 Haverford, PA 19041         610.525.5979  coaches@concentric.net

December 10, 2012

Yaacov P. Silberman, Esquire
Michael Moradzadeh, Esquire
Rimon, P.C.
One Embarcadero Center, Suite 400
San Francisco, CA 94111

## Management Letter of Intent

Dear Yaacov and Michael:

This is a letter of intent for Edgemark's Les Garnas to provide certain partner development services to Rimon Law as part of a comprehensive plan to:

- Help interested partners to improve their skills at (a) getting new business to add to their current book, (b) increase business from current clients, (c) think and act more strategically about cross-selling firm services, (d) building trust with current clients to create firmer relationship bonds, and when appropriate (e) value price their work consistent with identified needs and value appreciation of their clients
- Help identify experienced attorneys whose skills and interests in building their own book of business would make a positive contribution to growth and development of the firm

Work Plan for Business Development.
When a Rimon attorney agrees to improve his/her skills at getting and retaining profitable business, an individualized work plan would be developed to increase book commensurate with the time the attorney will spend on practice development. Starting with modest goal of at least 2-hours per week devoted to implementing various short-term strategies to develop business, (not including personal coaching time), committed attorneys should expect to increase their current book of business at the end of one year by at least 10-15% of existing book. To achieve this goal, the attorney should be willing and committed to:

1. Work with Les Garnas to develop a one-page business plan that includes (a) specific plans increasing business from currently-served clients, and including specific cross-selling opportunities (b) areas to focus practice with new business prospects, (c) specific prospects to pursue, along with a networking strategy to enlist help from people who know target company-decision makers and decision- influencers, and (d) appropriate timetables for action.
2. Work with Les Garnas face-to-face and by telephone to (a) apply current skills and abilities to pending business development situations, (b) review what has been

   accomplished in the interim period between meetings and suggested next meeting(s) and (c) set achievement goals for the next coaching session.
3. Quarterly, meet with the coach and a designated representative from firm management, to review individual attorney progress against plan, and including the coach's frank appraisal of the attorney's business development actions thus far, plans for accelerated development, and goals for the next review meeting.

Coaching-compensation Plan.
The Rimon business development coach, Les Garnas, would be paid a share of a program-enrolled attorney's revenue increases as follows:

**An attorney's revenue increases (based on actual colletions of matters originated by the attorney) from his/her program enrollment date through the next twelve months.**

The same share of increased fees arrangement would apply for every year an attorney remains enrolled in the program. All participants should be encouraged by the firm to remain in the program for at least one calendar year. However, enrolled participants may withdraw from the program at any time, as outlined below.

Coaching, Fee Structure, and Payment Timing.
- 10% of annual dollar revenue increase in originations for attorneys with an existing book of business equal to $400,000 and over.
- 15% of annual dollar revenue increase in originations for attorneys with an existing book of business equal to $399,000 or less.
- Coaching fees, as outlined above, would be accrued during the year, and accrued amounts would be paid at six-month and twelve-month intervals. Checks would be due within 30 days of the close of the period. For the six-month interval payment, the percentage increase is measured with reference to ½ of the attorney's total book for the 12 month period preceding the program start date. For instance, if the program start date is January 1, 2012, then the first payment would be due within 30 days of June 30, 2012. During that six month period Attorney X originates and collects $400,000. In all of 2011, Attorney X originated and collected $600,000. $600,000/2 = $300,000. Therefore, for purposes of calculating the six month payment, the increase is $100,000, resulting in a payment of $10,000. For the 12-month interval payment, the percentage increase is measured with reference to the attorney's book for the entire preceding 12 month period. To continue the preceding example, if during the second six-month period, Attorney X originates and collects another $400,000, then the increase for the entire year would be $200,000, so Rimon would owe EdgeMark $10,000 ($20,000 total less $10,000 already paid at 6 months). If instead, Attorney X only originated and collected $300,000, then the increase for the entire year would be $100,000, so Rimon would owe EdgeMark nothing additional. If Attorney X only originated and collected $200,000, then Attorney X would have realized no increase in book for the year, so Edgemark would reimburse Rimon the $10,000 it paid at the 6-month interval. In no event, however, would Edgemark have to reimburse Rimon more than Rimon has previously paid to Edgemark (for instance, in the event of a net decrease in book size).

- Payment is based on actual amounts collected, but payments are due regardless of when collection occurs, and subsequent payments may be necessary after the 12 month payment. For example, if at the close of 2013, an attorney has collected for work done that year $200,000 more than they collected for work done in 2012, Les will be paid $20,000 total from the 6 month and 12 month payments. However, if the attorney still has $100,000 in originated A/R from 2013 that is subsequently collected in 2014, Les would be owed an additional $10,000, to be paid as soon as practicable following collection. The relevant factor is when the work was performed.
- Compensation for working with attorneys who have less then one year of billing history (for instance, if they joined Rimon from an in-house position) shall be agreed upon between Rimon and Edgemark on a case-by-case basis. For the avoidance of doubt, attorneys who join Rimon from another firm shall never be placed in this category, even if they have no book of business at all (for instance, a service partner) and would be subject to the normal calculations listed above. For example, a service partner who had no originations at their prior firm would have a base book of $0.
- In an attorney's first year of participation he/she could withdraw from the program during the first 90-days of participation without penalty. Thereafter, and including subsequent years of participation, a flat fee of $2,000 would be payable within 30-days, for early program withdrawal.

Discussion of Potential Attorney-Candidates for Rimon Law.

If desired by Rimon Law Management, Edgemark's Les Garnas would work with attorney-employment firms to help Rimon Law identify good candidates to join the practice. Les's role would be to evaluate candidates' marketing interests and business development drive, in order to recommend them for further evaluation by Rimon partners—who would also concentrate on their business skills, and their legal credentials. At this time, Les would not be compensated for this activity. Les believes that asking attorney candidates to join the firm should be dependent upon:

1. A positive marketing and business development recommendation
2. Candidate agreement to participate in business development coaching tailored to his/her needs and interests
3. A positive legal capabilities review
4. Other requirements as outlined by Rimon Law

A candidate should be qualified in all four areas of the firm's interest to justify being hired by the firm. However, if a candidate were to be a recognized technical expert, and by management agreement, exempt from business development training, all of the above might not apply.

Other Considerations.
1. Les feels that there should be 4-6 attorney participants enrolled in the coaching program initially, with current billings averaging $450,000 from the outset to initiate the program.

2. Les will meet with Rimon's management to discuss an attorney's participation in the program before the attorney is admitted into the program. At this point, Les will have the

right to refuse to work with an attorney if he determines that the attorney is a bad fit.

3. Program participants need to commit to 45-minute coaching sessions at times scheduled (or at times changed by mutual consent 24-hours in advance).

4. An enrolled attorney would be expected to commit to spending a minimum of two hours each week, in advancing his/her individual business development plans.

5. Individual coaching sessions would take place weekly for the first three weeks, followed by bi-weekly, thereafter.

6. Participants should agree to meet with their coach and their designated management person at the outset of their participation to review their individual business plan. After the initial meeting, the three people would meet quarterly to review progress against plan.

7. Individual attorney strategies and progress issues would remain confidential, and between the attorney and his/her coach, unless there would be reason to involve the management person in a meeting--earlier than quarterly. If there is reason to meet, the coach would, in advance, explore the reasons for meeting with the enrolled participant.

8. Travel expense. Les Garnas will be meeting individually with participating West Coast individuals and management about four times a year. Rimon Law should share East Coast-to-West Coast travel expenses at a flat rate of $300/scheduled visit. As the program expands to East Coast participation, Edgemark will absorb the cost of NY-Washington D.C. travel expenses.

9. Each party acknowledges that such party may learn of Confidential Information (defined below) during the term of this Agreement. Each party shall not disclose to any Person (except as required by applicable law or for the proper performance of a party's duties and responsibilities to the other party), or use for such party's own benefit or gain, (a) this Agreement, its terms, or its contents or (b) any Confidential Information obtained by such party incident to work performed under this Agreement. This restriction shall continue to apply after this Agreement terminates, regardless of the reason for such termination. "Confidential Information" shall mean any and all information of the parties that is not generally known by others with whom it competes or does business, or with whom it plans to compete or do business and any and all information, publicly known in whole or in part or not, which, if disclosed by a party would assist in competition against it. Confidential Information includes without limitation such information relating to (i) the marketing and financial activities of a party, (ii) the manner in which a party operates, (iii) the costs, sources of labor and the amount and nature of payment to employees and independent contractors of the Rimon Entities, (iv) financial performance and strategic plans of a party, (v) the identity and special needs of the customers or suppliers of a party and (vi) the people and organizations with whom a party has business relationships and those relationships. Confidential Information also includes comparable information that a party has received belonging to others or which was received by a party with any understanding that it would not be disclosed. Confidential Information shall not include

any information that: (i) was or becomes generally known in the trade or business of the parties through no act of either party; or (ii) has come into the possession of a party from a third party who is under no obligation to such party to maintain the confidentiality of such information.

It would be a pleasure to work with you both, and the attorneys of Rimon Law.

Cordially,

*Lester R. Garnas*

Les Garnas


Agreed to by:


*Yaacov Silberman*

Yaacov Silberman, COO

*Michael Moradzadeh*

Michael Moradzadeh, CEO